[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action by writ and complaint claiming a dissolution of marriage and other relief as on file came to this court on October 30, 2000 with a return date of November 7, 2000 and thence to later dates when the defendant appeared through counsel. Both parties appeared for a limited contested trial which took place on September 13, 17, 19 and October 10, 2002.
The following facts are not in dispute and are established through the credible evidence at trial. The court has jurisdiction over this matter. The plaintiff, whose birth name is Monique R. Senter and the defendant were married on February 4, 1989 in San Diego, California. The parties have three minor children who are issue of the marriage, namely, Nicole Raeann Luna, born May 16, 1991; Jeanette Rachelle Luna, born August 31, 1993 and Renée Marie Luna, born on May 22, 1996. Neither party nor any minor child of the parties has received financial assistance from the state of Connecticut or any municipality of the state of Connecticut. The marriage has broken down irretrievably.
By written stipulation of the parties, the child related issues, namely custody, parenting time and child support, were resolved at the start of the trial. After trial, on November 12, 2002, the parties agreed to and the court approved a plan for college related child support pursuant toP.A. 02-128. As to the remaining issues, the court heard testimony and considered evidence.
The marriage of the parties lasted approximately thirteen years. Shortly after the marriage, the parties moved to Colorado from California and resided there until 1998 when they moved to Connecticut. In Colorado, the parties admittedly lived beyond their means and incurred substantial debt. Upon moving to Connecticut, the plaintiff continued as primary caregiver of the children, and the defendant supported the family financially. The debt was substantially reduced. They purchased a home in New Milford for $318,000, and by the time the marriage broke down in CT Page 14517 early summer 2000, the marital debt was again substantial. Despite the breakdown, the parties resided together at the marital home until it was sold in early February 2001. Much of the debt was again reduced by that sale and proceeds from the defendant's 401k from his present employer. At that time, the defendant bought a duplex for $219,000 and until October 2001, the plaintiff lived on one side and the defendant on the other. The plaintiff and the minor children moved to another rental property in New Milford in October 2001. The defendant now rents out one side of the duplex for $700. While the plaintiff argues that the rent should double, the court finds the defendant's testimony credible on the justification of the lower rent.
While there was testimony about the defendant's "addiction to lap dancing" early in the marriage and about the plaintiffs affairs late in the marriage, the court cannot find one party more at fault than the other for the breakdown of the marriage.
The real property assets of the marriage are the duplex in New Milford, valued at $260,500, with a first mortgage of $212,000 and a home equity loan of $11,375. The defendant testified that the well went dry, and he incurred $15,000 to have a new well drilled. There is an undeveloped lot in Colorado valued at $3500. The personal property has been divided. There is no disagreement over the ultimate ownership of the two motor vehicles.
As to the marital liquid assets, the parties have checking and savings accounts with balances at the time of trial of approximately $1,000. Additionally, the defendant holds Pitney B owes stock of approximately $4,494 in value, a life insurance policy with a cash value of $4,000, a 401k with Pitney Bowes of $28,727 and a military pension of undeterminable value.
The plaintiff is 39 years old and in good health. She received a B.S. in telecommunications from San Diego State College in 1988. For the first two years of the marriage, the plaintiff worked in customer support for Pitney Bowes in Colorado and earned approximately $22,000 to $23,000 a year. Since then, she has not held full time employment. For the remainder of the marriage she was the primary caregiver for the three minor children and earned no more than $2,000 any one year. Her present annual earned income is $1300. She has worked at a real estate office and as a substitute teacher. She has a real estate agent's license. She is currently taking courses one day a week to obtain a Master's in education. Her plan is to obtain that degree in two and one half years.
The defendant is 41 years old and, with the exception of a recently CT Page 14518 torn quadricep muscle, is in good health. He is employed as a reliability engineering manager for Pitney Bowes at an approximate salary of $112,000. For the year 2000. he received a bonus of $18,000. For the year 2001, he received $6,000. He does not anticipate receiving a bonus for the year 2002. He is in the Naval reserves, reporting for drills once a month and for active duty two weeks a year. His annual salary from naval reserves is $9400. The defendant also receives rental income of $700 a month or $8400 annually. The defendant has obtained a "Work Life Balance Plan" from his employer that will allow him to implement the parenting plan that provides him 6 overnights with his children in a two week cycle.
Having heard the testimony presented by the parties and having considered the evidence presented at trial, the court enters the following orders based upon the criteria set forth in General Statutes §§ 46b-56, 46b-81, 46b-82, and 46b-84:
1. The marriage is dissolved.
2. The defendant shall pay periodic alimony to the plaintiff for a period of six years. For the first 30 months, the plaintiff shall receive the amount of $600 per week. For the remaining 42 months, the plaintiff shall receive the amount of $350 per week. The alimony shall terminate upon the first of the following events: 1) remarriage of the plaintiff, 2) cohabitation of the plaintiff as defined by General Statutes § 46b-86
(b), 3) death of either party; 4) November 15, 2008.
3. In accordance with the Agreement dated September 13, 2002 docketed as #148 and approved by the court, the court awards joint legal custody of the three minor children to the parties, with the children's primary physical residence with the plaintiff and parenting time with the defendant as specifically set forth in Article 1 (Paragraphs 1.1. — 1.14).
4. In accordance with the Agreement dated September 13, 2002 docketed as #148 and approved by the court, the defendant shall pay child support to the plaintiff in the amount of $560 as specifically set forth in Article 2. All other child related issues of support and health care are ordered as set forth in Articles 3 and 4 of the Agreement.
5. The court approves and incorporates into this judgment an agreement dated November 8, 2002, which states,
During their marriage, the parties established a college education account for Nicole and a college CT Page 14519 education account for Jeanette. The current balance of Nicole's college education account is approximately $4,500, and the current balance of Jeanette's college education account is approximately $370. The current balance in each account shall be maintained in separate interest-bearing accounts, one account for Nicole and one account for Jeanette. Nicole's "educational expenses" and Jeanette's "educational expenses" first shall be paid from her separate college education account, along with the interest her account has earned by the time she attends an institution of higher education. Hereafter, either party may establish a college education account for Renee or an additional account for Jeanette or Nicole, which account may be used by that party for his or her obligation for the percentage of the child's "educational expenses" as set forth herein. The parties anticipate that, when each child applies to an institution of higher education and based upon what the parties project their incomes, assets, and other obligations to be relative to one another at that time, it will be fair that defendant be responsible for 70% and plaintiff for 30% of each child's "educational expenses". "Educational expenses" for each academic year shall include, but not be limited to, the cost at that time of room, board, dues, tuition, books, registration and application costs, medical insurance, and customary fees for a full-time-in-state student at the University of Connecticut. Each party's obligation shall be limited to a total of four full academic years for each child and shall terminate upon the later to occur of a child's 25th birthday or the end of the academic year in which a child turns 25. Any financial aid, grants or scholarships that each child obtains shall reduce the total amount of each child's "educational expenses" for the academic period to which such aid, grant, or scholarship applies, and defendant shall be responsible for 70% and plaintiff for 30% of the remaining "educational expenses" for that academic period.
To qualify for payments due under this education support order, each child must: (1) enroll in an accredited institution of higher education or private CT Page 14520 occupational school, as defined in section 10a-22 of the Connecticut General Statutes; (2) actively pursue a course of study commensurate with the child's vocational goals that constitutes at least one-half the course load determined by that institution or school to constitute full-time enrollment; (3) maintain good academic standing in accordance with the rules of the institution or school; and (4) make available all academic records to both parties during the term of the order.
 This education support order shall be suspended after any academic period during which the child fails to comply with her obligations as stated herein.
6. The defendant shall maintain life insurance on his life in the face amount of $350,000 and shall name the plaintiff as the irrevocable beneficiary of $100,000 of that benefit until his alimony obligation to the plaintiff has terminated. The minor children shall be equal irrevocable beneficiaries of the balance of $250,000 until the youngest child reaches 22 years of age. The plaintiff shall be the trustee for the children for the $250,000.
7. The plaintiff and defendant shall each assume the debts listed on the respective financial affidavits and indemnify and hold the other harmless from those and any other debts each may have incurred since the filing of those affidavits.
8. The defendant shall retain in his sole name the property at 695 Kent Road, New Milford. He shall be responsible for the mortgage, taxes, insurance and other expenses and shall indemnify and hold the plaintiff harmless from any such liabilities and expenses related to that property.
9. The defendant shall transfer to the plaintiff all of his right, title and interest in the property at Lot 14, Unit 3 in the plaintiff Sherwood Forest Estates of Teller County, Colorado. The plaintiff shall be responsible for all taxes, insurance and other expenses and shall indemnify and hold the defendant harmless from any such liabilities and expenses related to that property.
10. Within ninety days after the date of judgment, the defendant shall pay the plaintiff $18,500 as property settlement.
11. The plaintiff shall transfer all her right, title and interest in CT Page 14521 the 1995 Pontiac Grand Prix and the 1992 Plymouth Voyager to the defendant. Each party shall hold the other harmless as to any expenses or liabilities related the vehicle or vehicles they retain as a result of this order.
12. The defendant shall transfer forthwith to the plaintiff 50% of the value of his 401k account at Pitney Bowes, valued as of the date of this dissolution by way of a Qualified Domestic Relations Order. The plaintiff shall receive any investment increment attributable to her portion that is, increases or decreases, from the date of dissolution to the time of transfer. The court reserves jurisdiction to effectuate the transfer of this asset.
13. The defendant shall transfer to the plaintiff 50% of that part of his military pension that accrued during the marriage by way of a Qualified Domestic Relations Order or other appropriate means. The court reserves jurisdiction to effectuate the transfer of this asset.
14. All other assets listed on the respective financial affidavits not otherwise addressed in these orders shall remain each party's free and clear of the other.
15. The defendant shall be responsible for, indemnify and hold the plaintiff harmless from any tax, penalties, interest, claims, deficiencies or the like relating to their joint income tax returns that is attributable to his income or deductions. The plaintiff shall be responsible for, indemnify and hold the defendant harmless from any tax, penalties, interest, claims, deficiencies or the like relating to their joint income tax returns that is attributable to her income or deductions.
16. The defendant shall be entitled to take all three children as dependency exemptions for two years. Thereafter the defendant shall be entitled to take exemptions for the two oldest children and the plaintiff shall be entitled to take an exemption for the youngest. When there is only one child qualifying, the parties shall alternate each year, beginning with the defendant.
17. The defendant shall pay the plaintiff $10,000 towards her counsel fees within ninety days.
Judgment may enter in accordance with this decision.
___________________ DiPentima, J. CT Page 14522
[EDITORS' NOTE: This page is blank.] CT Page 14523